FILED
JAMES BONINI
CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

06 MAR 14 PM 1:33

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

---

GABRIEL ZEITOUNI, : Case No. ___ C2 06 19_

1948 East 1st Street :

Brooklyn, NY 11223 :

          : **JUDGE FROST**

        *Plaintiff,* : Judge _____

          : **MAGISTRATE JUDGE ABEL**

     -- v. -- : Magistrate _____

          :

JAY L. SCHOTTENSTEIN, : **VERIFIED COMPLAINT**

1800 Moler Road :

Columbus, OH 43207 :

       *Defendant.* : **JURY TRIAL DEMANDED**

---

Plaintiff Gabriel Zeitouni ("Plaintiff" or "Zeitouni"), by his attorneys, Allen, Kuehnle & Stovall LLP and Judd Burstein, P.C., complaining of the Defendant Jay L. Schottenstein ("Defendant" or "Schottenstein"), alleges as follows.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, in that this is a dispute between citizens of different states where the amount in controversy exceeds $75,000.

2. Venue lies in this district pursuant to 28 U.S.C. § 1391(a).

## PARTIES

3. Zeitouni is a citizen of the State of New York.

4. On information and belief, Schottenstein is a citizen of the State of Ohio who resides in Columbus, Ohio.

## PLAINTIFF'S CLAIM FOR RELIEF

5.     Zeitouni, through a number of different companies, is engaged in the business of, among other things, purchasing and selling first-quality excesses, non-first quality or returned clothing ("off-price product") that would otherwise be purchased and/or sold by major retailers, such as Abercrombie & Fitch (a Zeitouni client). Plaintiff's companies work pursuant to written agreements with such major retailers, which require Plaintiff to purchase its off-price product, and then sell it on terms set by the major retailer and only to discount retailers who are specifically approved by the major retailer.

6.     The services offered by Zeitouni and his companies are of value to their customers in a number of ways, including: (a) as part of the services provided, Zeitouni institutes factory-level controls to help ensure that a major retailer's off-price product does not find its way into markets which, in the retailer's view, would diminish the value of its trademarks, (b) Zeitouni and his companies provide their customers with a guaranteed sales outlet for off-price product that does not sell within the season, and (c) Zeitouni and his companies protect their customers from the loss of production capacity by purchasing substandard goods produced by factories that would otherwise be rejected by Zeitouni's customers, thereby causing overwhelming financial problems for those factories.

7.     In or about late 2004, Zeitouni learned from Ike Franco ("Franco"), a mutual friend of Zeitouni and Schottenstein and the Chairman of the Board of American Eagle Outfitters, Inc. ("American Eagle"), of a potential opportunity for Zeitouni to enter into a business relationship with American Eagle with respect to American Eagle's off-price product.

8. Commencing in early 2005, Zeitouni started working to set up a relationship between his companies and American Eagle through communications to Schottenstein through Franco. Those efforts continued from early 2005 until late 2005.

9. Zeitouni met with Schottenstein twice, once in April 2005 in Columbus, Ohio and once in June 2005 in New York, New York.

10. As a result of the first meeting, and discussions thereafter, Schottenstein expressly authorized Zeitouni to go out into the market and demonstrate that he could purchase American Eagle goods from unauthorized sources.

11. After receiving that authorization, Zeitouni followed up by purchasing a number of different styles of American Eagle t-shirts and securing samples of two other items of American Eagle product – a woman's denim jacket and a satin skirt.

12. On May 27, 2005, Zeitouni sent an e-mail to Schottenstein in which Zeitouni: (a) recapped Schottenstein's approval of Zeitouni purchasing unauthorized American Eagle product to demonstrate that American Eagle did not have adequate controls in place; (b) explained that the purchases had in fact been made; (c) detailed Zeitouni's perception of the extent of the problems; (d) explained why American Eagle's present controls were inadequate; and (e) asked that Zeitouni, through one of his companies, be granted the international distribution rights for American Eagle off-price product.

13. On June 1, 2005, Zeitouni, Schottenstein and Franco met at the Regency Hotel in New York City, New York. At this meeting, Zeitouni showed Schottenstein samples of the t-shirts Zeitouni had purchased, as well as the denim jacket and skirt.

14. Thereafter, Schottenstein knowingly and falsely told third parties, in word and substance, that Zeitouni was a "major counterfeiter," and had purchased and sold American

Eagle counterfeit product when in fact no such product had ever been sold and had been purchased upon Schottenstein's authorization.

15. The precise dates of Schottenstein's false statements, as well as the identities of the persons to whom he spoke, are peculiarly within Schottenstein's knowledge. However, at a minimum, Schottenstein made such statements in late February 2006 on a telephone call to Paul Guez ("Guez"), as well as to Franco on a number of occasions after August 2005.

16. Schottenstein's statements about Zeitouni were false statements of fact.

17. Schottenstein's false statements about Zeitouni were defamatory.

18. Schottenstein's false statements about Zeitouni were published to Guez, and, on information and belief, to other third parties.

19. Schottenstein's false statements about Zeitouni were an accusation of conduct amounting to an indictable criminal offense involving moral turpitude and tended to injure Zeitouni in his trade or occupation.

20. Schottestein's false statements were made with maliace and/or with willful, wanton and reckless disregard.

21. Schottenstein's false statements about Zeitouni have proximately caused injury to Zeitouni's reputation and have caused him shame, humiliation and mental anguish.

22. Schottenstein's false statements are slander per se.

23. Zeitouni has suffered damages in an amount to be determined at trial, but in an amount greater than $75,000.

24. In addition, because Schottenstein's statements about Zeitouni were made with malice and/or with willful, wanton and reckless disregard for the truth, Zeitouni is entitled to recover punitive damages and his attorneys' fees.

- 4 -

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

A) Damages reasonably believed to be in excess of $75,000, which will be more specifically proven at trial;

B) Punitive damages in an amount to be proven at trial;

C) Costs of this action;

D) Attorneys' fees; and

E) Such other and further relief, at law or equity, as deemed just and proper by this Court.

Respectfully submitted,

Todd Neuman   (0059819)
ALLEN, KUEHNLE & STOVALL LLP
21 West Broad Street, Suite 400
Columbus, Ohio 43215
(614) 221-8500
Fax: (614) 221-5988
Email: neuman@akslaw.net
Trial Attorney for Plaintiff

Co-Counsel:

Lisa Norris  (0061550)
ALLEN, KUEHNLE & STOVALL LLP
21 West Broad Street, Suite 400
Columbus, OH 43215
(614) 221-8500
FAX: 614-221-5988
Email: norris@akslaw.net

and

Judd Burstein
JUDD BURSTEIN, P.C.
1790 Broadway, Suite 1501
New York, New York 10019
(212) 974-2400

*Co-Counsel for Plaintiff*
*GABRIEL ZEITOUNI*

- 5 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
-------------------------------------------------------X

GABRIEL ZEITOUNI,

                   *Plaintiff,*

         -- against --                   No. _____

JAY L. SCHOTTENSTEIN,

                 *Defendant.*
-------------------------------------------------------X

## VERIFICATION

**GABRIEL ZEITOUNI**, being duly sworn, deposes and says:

I am the Plaintiff in the above-captioned action. I have read the annexed **VERIFIED COMPLAINT**, know the contents thereof, and the same is true to my knowledge, except those matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true.

                                           _____

                                           GABRIEL ZEITOUNI

Sworn to before me this
_10_ th day of March, 2006

_____
Notary Public

PAUL GUZMAN
Notary Public, State of New York
No. 01GU6081645
Qualified in Queens County
Commission Expires 10/15/2006